MEMPHIS, DALLAS & GULF RAILROAD COMPANY *v.* YANDELL.

Opinion delivered May 1, 1916.

1. CARRIERS—MOVEMENT OF CARS—INJURY TO OWNERS OF FREIGHT AND EMPLOYEES.—It is the duty of a carrier to exercise ordinary or reasonable care and diligence in moving its cars, to prevent injury to owners of freight and their employees rightfully engaged in loading or unloading cars.

2. CARRIERS—MOVEMENT OF CARS—EMPLOYEES OF SHIPPER—INJURY—NOTICE.—Where the employees of the shipper of freight are engaged in loading a car, the carrier will not be liable for an injury to one of such agents, when notice that the car was to be moved was given in apt time, to have enabled plaintiff to reach a place of safety, or to have prepared for the movement.

Appeal from Hempstead Circuit Court; *George R. Haynie,* Judge; reversed.

*J. W. Bishop, J. G. Sain, E. B. Kinsworthy* and *R. E. Wiley,* for appellants.

A verdict should have been directed for defendants. There was no evidence showing liability. The law is well settled and the court erred in its instructions. 33 Cyc. 1141; 88 Ark. 531; 101 *Id.* 43, 433; 105 *Id.* 184;

Kirby's Digest, § 6607 as amended by Act May 26, 1911. Appellee was bound to the exercise of ordinary or reasonable care, and if by the exercise of such care he could have seen the approach of the cars in time to have avoided the injury and failed to do so, no recovery could be had. The question of contributory negligence was for the jury. 101 Ark. 43, 433.

*McRae & Tompkins,* for appellee.

There is no error in the instructions. 93 Ark. 15. The evidence sustains the verdict.

Hart, J. Jim Yandell sued the Memphis, Dallas & Gulf Railroad Company and St. Louis, Iron Mountain & Southern Railroad Company, to recover damages for injuries received by him while loading a car on the side track of the defendants. The plaintiff charges that on the 5th day of March, 1915, while he was loading a car in the yards of the St. Louis, Iron Mountain & Southern Railway Company at Glenwood, the employees of the Memphis, Dallas & Gulf Railroad Company, who were permitted to use the side tracks of its co-defendants for the purpose of switching its cars, negligently ran one of its engines against the car in which the plaintiff was working, with such force as to injure him.

The case was tried before a jury which returned a verdict for the plaintiff and from the judgment rendered the defendants have appealed. The only question that needs consideration here is whether the court below erred in refusing to direct a verdict for the defendants.

On the day the plaintiff was injured he was engaged in loading a car of household goods at Glenwood, a station on the line of the St. Louis, Iron Mountain & Southern Railway Company. The car had been placed on the side track and turned over by the agent to be loaded with household goods to be shipped to Womble. The plaintiff and one H. T. Grant were employed by G. A. Driggars, a drayman, to load the car. Driggars said that he had backed his wagon up against the car and they had put into the car a big stove weighing about four or five hundred pounds; that the plaintiff and Grant were still in

the car and that he was on the wagon handing out goods to the plaintiff to be loaded in the car. That there was another person named Burk unloading a car of feed two or three cars ahead of him; that an employee of the, Memphis, Dallas & Gulf Railroad Company hallooed to Burk that one of its engines was coming in on the side tracks to couple to the cars there; that Burke hallooed to him that the engine was coming in and he hallooed to the boys in the car that the engine was going to hit the car. At the same time he whipped up his horses. Just as soon as he got his wagon away from the car the engine hit it and coupled on to it. He also stated that Yandell was in the door of the car by the stove and could have stepped out of the car after he warned him. Grant stated that he was further back in the car and that the engine struck the car tolerably hard; that he heard some one say before that, to look out that the engine was going to hit the car; that this was just a few minutes before the engine did hit the car; that Yandell was sitting down, the first he saw of him after the engine struck the car; that the car was moved when the engine struck it but it was only moved a little bit.

The plaintiff testified that when the engine came back and struck the car he was taking things that Mr. Driggars was handing to him and placing them in the car; that the stove was right in the door of the car; that he never heard the engine coming and does not remember when it struck the car; that the last thing he remembered was picking up a box and did not remember anything more until three days afterwards. The plaintiff was treated for pneumonia after this and one of his physicians testified that pneumonia was some times caused by a fall or some injury.

(1) On the part of the defendants it was shown that its employees warned the persons engaged in loading the car before the engine coupled on to it. It was also shown by the defendants that in making the coupling that the engine did not strike the car with any unusual force. It is well settled in this State that it is the duty

of the carrier to exercise ordinary or reasonable care and diligence in moving its cars, to prevent injury to owners of freight and their employees rightfully engaged in loading or unloading cars. *St. Louis, I. M. & S. Ry. Co.* v. *Clements,* 93 Ark. 15; *Missouri & North Arkansas Rd. Co.* v. *Duncan,* 104 Ark. 409; *Little Rock & Hot Springs Western Rd. Co.* v. *Cross,* 78 Ark. 220; *Little Rock & Hot Springs Western Rd. Co.* v. *McQueeny,* 78 Ark. 22.

(2) The car had been turned over to the shipper by the railroad agent for the purpose of loading it. The plaintiff was employed by the drayman to assist in loading the goods into the car. Hence he was rightfully in the car and it was the duty of the defendants to exercise ordinary care in giving notice or warning of the intention to make the coupling. The undisputed evidence shows that this warning was given. From the principles announced in the authorities just cited, it is apparent that the defendant was not required to give notice to each one of the persons engaged in loading goods into the car. Notice given in apt time to one of those engaged in loading the car was sufficient.

Driggars, the drayman who was employed to haul the goods and load them into the car testified, that defendant's agents hallooed to a Mr. Burk who was unloading a car nearby that one of its engines was coming in on the side track to couple to the car; that Mr. Burk notified him of this fact; and that he at once notified the plaintiff and Grant who were both in the car; that he at the same time drove up his wagon and that plaintiff who was standing in the door of the car had time to get out of it before the engine struck the car.

Grant also testified that he heard the warning but was further back in the car than the plaintiff. The defendant's employees also stated that warning that the engine would be coupled on to the car was given. The plaintiff himself did not testify in regard to this precise point but it was not shown that he was deaf. He was standing in the door of the car when the warning was

given by the drayman who was only a few feet away. The warning was heard by another person further back in the car and plaintiff will have also be deemed to have heard it. The evidence showed that the warning was given in time for him to have jumped out of the car or to have braced himself if he elected to stay in the car. It is also claimed that even if the warning was given in time, that the engine was bumped into the car with unusual violence and this was an act of negligence subjecting it to liability for an injury to the person in the car. Here again however, the undisputed evidence shows that the engine did not strike the car with unusual violence.

The witnesses for the defendant testified that the coupling was made in the usual manner and that there was no unusual jolt or jar. Grant who was in the car with the plaintiff testified, that the engine struck the car tolerably hard; but this is not equivalent to saying that it struck it with unusual force. It is a matter of common knowledge that the engine would be required to strike it with some force in order to make the coupling. Grant was not thrown down or inconvenienced in any way by the impact of the engine against the car. There is nothing whatever in the testimony from which the jury might have inferred that an unusual or extraordinary jolt or jar was caused when the engine coupled on to the car. It follows that the verdict of the jury was without evidence legally sufficient to support it. Therefore, the court erred in not directing a verdict for the defendants. For that error, the judgment must be reversed and inasmuch as the plaintiff's case has been fully developed, his cause of action will be dismissed.